

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2007

# Allen v. Natl RR Passenger

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4551

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Allen v. Natl RR Passenger" (2007). *2007 Decisions*. Paper 1721.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1721

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4551

DEBRA ALLEN, ET AL; BEVERLY GREEN
RONALD JONES; JOILYNN SCOTT; BILLY
SHAW; YVONNE UPSHUR,

Appellants

v.

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 03-cv-03497)
District Judge: Honorable Legrome D. Davis

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2007

Before: McKEE, AMBRO and STAPLETON, Circuit Judges

(Opinion filed: January 31, 2007)

OPINION

AMBRO, Circuit Judge

    This is an appeal from an order granting summary judgment in favor of the

National Railroad Passenger Corporation ("Amtrak") in a Title VII race discrimination case. Because the District Court properly found that the Plaintiffs have not met their burden of production on any of their claims, we affirm the grant of summary judgment.

## I. Facts and Procedural History

Plaintiffs Debra Allen, Beverly Green, Ronald Jones, Joilynn Scott, Billy Shaw, and Yvonne Upshur all work at Amtrak's Wilmington, Delaware administrative facility. They allege that Amtrak has violated their civil rights by (1) subjecting them to a hostile work environment, (2) retaliating against them when they complained about racial discrimination, and (3) failing to promote them on the basis of race.

In support of their claims, they cite the following two incidents. In January 2001, some of the Plaintiffs overheard an Amtrak employee in Kansas City, Missouri make a racially offensive remark in a telephone conversation with an Amtrak employee in Wilmington. Specifically, the Kansas City employee stated that "a bunch of n_____s are running the operation" in Wilmington. The incident was reported to Amtrak, and Amtrak submitted evidence that it responded by suspending the offending employee for ten days without pay and demoting him.

In May 2001, someone posted a racially derogatory flyer at the Wilmington facility. The flyer contained a picture of the face of an African American male with a slash mark through it. When the flyer was discovered, Amtrak managers gathered up all of the copies and sent one to the company's Dispute Resolution Officer ("DRO"). They also notified the police and held an all-employee meeting some 90 minutes after the flyer

2

was discovered. At the meeting, Amtrak managers stated that the flyer violated company policy, the incident would be investigated rigorously, and misconduct of this sort would not be tolerated. Amtrak was not able to discover the person who posted the flyer. Plaintiff Green testified that later that day she saw Amtrak manager Michael Kates hold up the flyer among two other white colleagues and laugh at it. On learning of this allegation (though an anonymous e-mail), the Amtrak DRO scheduled a meeting among Green, Kates, and a DRO representative. Green refused to attend.

In their individual depositions, each of the Plaintiffs alleged other, individual events of discrimination. We address those allegations below as they relate to the Plaintiffs' legal claims on appeal.[1]

## II.   Summary Judgment

We review grants of summary judgment *de novo*, applying the same standard that the District Court should have applied. *Cetel v. Kirwan Fin. Group*, 460 F.3d 494, 506 (3d Cir. 2006). We affirm grants of summary judgment when, construing all record evidence in the moving party's favor, there are no genuinely disputed issues of material fact, and the non-moving party must prevail as a matter of law. *Id.*

When, as here, a civil defendant moves for summary judgment, the plaintiffs must show that they have satisfied their burden of production—that they have produced evidence supporting each element of their claims. *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1] We have jurisdiction under 28 U.S.C. § 1291.

3

322–23 (1986). If they have not, then the defendant is entitled to summary judgment. *Id.*

## III. Hostile Work Environment

For Plaintiffs' hostile work environment claim, a *prima facie* case has five elements: (1) the employee suffered intentional discrimination because of [her/his race], (2) the discrimination was severe and pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same [race] in that position, and (5) the existence of *respondeat superior* liability. *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006).[2] The Plaintiffs bear the burden of proof on each of these elements. *See id.*

Here, the Plaintiffs' evidence is insufficient to bear their burden. The only specific incidents they cite are the telephone conversation and the flyer posting detailed above. In addition, they allege in interrogatory responses that:

> [i]n several other incidents of racial discrimination and harassment white managerial/supervisory personnel made false accusations about plaintiffs and other African Americans and yelled at them in a derogatory manner. When plaintiffs and others advised appropriate supervisory/management personnel of the racial discrimination and harassment to which plaintiffs were being subjected, defendant failed to conduct any real investigation of the problem and failed to take any effective corrective action.

J.A. at 149. Moreover, when Amtrak deposed the six plaintiffs, not one of them could describe these "other incidents" with any specificity.

---

[2] We recognize that *Jensen* was a sex discrimination case, but we have held that the elements of the *prima facie* case are the same no matter the protected class at issue. *See Carver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).

4

Under Title VII, an employer can only be held liable for the actions of other employees in creating a hostile work environment when the plaintiff-employee can prove that "the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action." *Weston v. City of Philadelphia*, 251 F.3d 420, 427 (3d Cir. 2001) (citation omitted). Here, the following facts are undisputed[3]: (1) Amtrak disciplined the offending employee after becoming aware of the telephone incident; (2) upon being apprised of the flyer incident, Amtrak swiftly removed the flyers, filed an incident report with the police, and held an all-employee meeting to explain that the incident was unacceptable and under investigation; (3) upon being apprised of the allegation against Kates, Amtrak's DRO asked Green and Kates to a meeting to discuss the incident, which Green refused to attend; and (4) none of these incidents was repeated. Moreover, it is undisputed that any racial harassment violates Amtrak's written policies and that Amtrak has a functioning dispute resolution process with a dedicated dispute resolution officer and staff. On this record, all of the evidence supports Amtrak's argument that it both provides a reasonable means of complaint and that it appropriately responded to all alleged incidents of

---

[3] By "undisputed" we mean that we find no contrary evidence in the record. We recognize that the Plaintiffs "deny" many of these facts in their pleadings and in their briefing, but at the summary judgment stage, we look beyond the pleadings to whether there is actual evidence on both sides of the relevant factual questions. Here, there is not.

discrimination.[4]

## IV.    Unlawful Retaliation

A *prima facie* case for unlawful retaliation has three elements: "(1) that [the employee] engaged in protected activity, (2) that the employer took adverse action against her, and (3) that a causal link exists between the protected activity and the employer's adverse action." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citations omitted). Because each plaintiff alleges different retaliatory events, we deal with each separately.

### A.    Allen

In her deposition, Allen recounted two incidents that she alleged constituted unlawful retaliation. She testified that sometime after she spoke with Kates's manager about his demeaning behavior, he (1) began undercutting her authority by changing assignments that she gave to her clerks on days that she was absent and (2) once called her out of a meeting to criticize the way that she changed a schedule.

As the Supreme Court held last year, "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*

---

[4] Alternatively, we note that the incidents alleged fail to rise to the level of "pervasive" discrimination, as they are few in number, were separated by four months, and appear wholly unrelated to one another. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 760–61 (6th Cir. 2000). Furthermore, these incidents were not so severe as to alter the conditions of the Plaintiffs' employment and create an abusive working environment.

*N. & Santa Fey Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2401, 2415 (2006) (citations omitted). Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations and internal quotation marks omitted). The actions that Allen alleges—reassignment of work while absent and one incident of criticism—simply do not rise to the level of material adversity. Moreover, she offers no evidence linking the incidents to her complaints against Kates, aside from the bare fact that they occurred in the following months. On this record, Allen has not produced evidence substantiating a *prima facie* case of retaliation.

### B. Green

In her deposition, Green was asked: "Can you tell me how Amtrak or anyone at Amtrak retaliated against you?" J.A. at 602. She responded: "I don't remember." *Id.* Thus, she is unable to substantiate any allegation of retaliation.

### C. Jones

In his deposition, Jones testified that one of his managers issued a written reprimand to him for excessive telephone usage. Another manager initiated an investigation against him related to his performance, but nothing came of the investigation. He further testified that he believed that both of these incidents were motivated by personal dislike. He cited neither racial animus nor retaliation for his Equal Employment Opportunity Commission ("EEOC") complaint as the motivation. Thus, he

7

cannot link the incidents—which also were not sufficiently adverse—to any protected activity.

**D.      Scott**

In her deposition, Scott testified that the only incident of retaliation that she could recall was her October 2003 disqualification from working as a crew management representative.  She admitted, however, that Amtrak cited two reasons for issuing the punishment: (1) repeated violations of the attendance policy, and (2) repeated embellishment of her ticket count.  Scott further testified that she voluntarily waived her right to contest the allegations against her, and that she voluntarily signed a waiver admitting the violations.  She offered no explanation why she thought that the disqualification—which occurred months after her EEOC complaint was resolved and two years after it was filed—was related to any protected activity.  On this record, she has failed to produce any evidence of a causal link between the incidents.

**E.      Shaw**

Shaw testified to three incidents he interpreted as retaliation: (1) failure to train him and other members of his work group as promised, (2) changes in shift schedules, and (3) Kates's failure to welcome him back in a timely manner when he returned to work following a suspension.  The training and shift-change incidents affected not just Shaw but all members of his workgroup.  He admitted in his deposition that neither policy change singled him out.  Moreover, he has presented no evidence that would lead a reasonable person to infer that the incidents had anything to do with his EEOC complaint,

8

which was filed two and a half years before the changes and resolved months beforehand. In addition, the failure to welcome does not constitute adverse action.

### F. Upshur

Upshur testified to two incidents that she believed were retaliatory: her manager (1) wrongly accused her of violating Amtrak's attendance policy, and (2) issued a written reprimand for improperly communicating with a coworker during a designated rest period. For the attendance policy violation, Upshur testified that, when her manager approached her about the issue, she told him that he was mistaken, and he reviewed the policy and admitted his error. He took no formal action against her. As to the reprimand, Upshur has not denied its allegations, nor does it appear that the reprimand affected Upshur's employment in any material way. Moreover, she produced no evidence linking it to her EEOC complaint, which was filed a year before the incident. Thus, she cannot make out a *prima facie* case of retaliation.

## V. Failure to Promote

Only Jones and Scott press failure to promote claims. A *prima facie* case here has three elements: the plaintiff must establish that "(a) she was a member of a protected class, (b) she was qualified for the . . . job to which she applied, and (c) another, not in the protected class, was treated more favorably." *Scheidemantle v. Slippery Rock Univ. State Sys. of Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). If the plaintiff succeeds in establishing a *prima facie* case, then the burden shifts to the employer to proffer a legitimate, non-

9

discriminatory reason for the failure to promote. *Id.* If it does, then the burden shifts back to the plaintiff to show that the proffered reason is pretextual. *Id.*

### A. Jones

Jones alleges that he was denied promotions to a Lead Crew Dispatcher position, and to a Customer Service Agent position, in 2001. We need not address the *prima facie* case because in both instances Amtrak offered a legitimate reason for not promoting Jones that he has failed to rebut. Specifically, it argues that Jones was less qualified than the applicants hired because he has a poor disciplinary record—a record that included two suspensions in the year prior to his applications. Amtrak further notes—and Jones does not contest—that many of the people hired for both positions are African American. He offers no evidence to suggest that Amtrak's reason was pretexual in either situation. Thus, his claims cannot succeed.

### B. Scott

Scott also complains of Amtrak's failure to promote her to the position of Lead Crew Dispatcher. Again, we need not address the *prima facie* case because Amtrak proffered two legitimate reasons, and Scott failed to produce evidence of pretext. Specifically, Amtrak stated that Scott was less qualified than the applicants hired and that she performed poorly in her interview by displaying a lack of understanding of the job and of the department. Scott has failed to produce any evidence that would undercut these legitimate reasons. Her claim, therefore, fails.

### VI. Concluding Remarks

In closing, we cannot help but note that the Plaintiffs' brief does not meet the rather basic requirements of Federal Rule of Appellate Procedure 28(a)(9). It makes no attempt to set out the elements of the various Title VII claims; indeed, it fails to cite a single case for a proposition relevant to Title VII. For all its rhetoric about summary judgment, it makes no attempt to connect the summary judgment standard to the substantive law applicable to this case, and it fails to cite the plaintiffs' depositions, which are clearly relevant to whether they can provide evidentiary support for their claims. We note that counsel's performance in front of the District Court was also underwhelming, as the Court sanctioned him for "numerous discovery violations." In any future appearances before our Court, we strongly advise Plaintiffs' counsel to take notice that we expect more from members of our bar.

Because the Plaintiffs have not met their burden of production, the District Court's grant of summary judgment in Amtrak's favor is affirmed.