IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen Finsterbusch,            :
               Appellant      :
               :
        v.                :    No.  970 C.D. 2021
               :
Pennsylvania Department of Health,    :    Submitted:  April 22, 2022
Commonwealth of Pennsylvania      :
and Douglas P. Koszalka          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: September 6, 2023

Kathleen Finsterbusch (Appellant) appeals from the final judgment of the Court of Common Pleas of Luzerne County (trial court) entered in favor of the Pennsylvania Department of Health (Department), Commonwealth of Pennsylvania, and Douglas P. Koszalka (Koszalka) (collectively, Appellees) on May 5, 2021.  Upon review, we affirm.

## I.     BACKGROUND AND PROCEDURAL HISTORY

This action stems from Appellant's claim against the Department and Koszalka, who was Appellant's supervisor, for retaliation in violation of Title VII of the Civil Rights Act of 1964, U.S. Const. amend I, 42 U.S.C. § 2000e-3(a), the First Amendment of the United States Constitution, and the Pennsylvania Human Relations Act (PHRA)[1] after she assisted her husband in his sex discrimination complaint against

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

the Department. At issue in the retaliation claim was a written reprimand that Appellant received from Koszalka nine months after her husband's discrimination claim for failure to answer and set up a voicemail on her Department-issued phone. (Reproduced Record (R.R.) at 897a-98a.) After receiving this reprimand, Appellant filed a complaint in the trial court against the Department asserting that the reprimand was in retaliation for assisting her husband in his sex discrimination case. In the complaint, Appellant argued that the retaliation violated Title VII, the First Amendment, and the PHRA. (R.R. at 27a-37a.) The Department removed the matter to federal court, but it was remanded to state court. (R.R. at 11a, 75a.) The matter proceeded to a three-day jury trial.

## A. Pretrial Matters

During jury *voir dire*, Appellant's counsel, Cynthia Pollick, Esq. (Attorney Pollick) asked two jury venire questions relevant to this appeal: (1) "Have any of you, your family or close friends ever visited the website of thatfamily.com or any of the site[s] created after the original? If so, please explain;" and (2) "Do any of you know any Trozzolillos?" (R.R. at 47a.) The Department's counsel, Deputy Attorney General Karen Romano (Attorney Romano), objected to the first question because when searching for thatfamily.com on the Internet, she found that it was nonexistent. *Id.* Attorney Pollick explained that she was in divorce proceedings with her husband, Anthony Trozzolillo, Esq. *Id.* Attorney Pollick suspected that Trozzolillo was behind the website to "damage[ ] [her] reputation[,] [and] so she needed to ferret out this information, unfortunately," and that she was unsure of the subject of thatfamily.com. *Id.* The trial court overruled Attorney Romano's objection to the first question, and because no objection was lodged to the question regarding the

Trozzolillos, Attorney Pollick was permitted to ask both questions. (R.R. at 49a.) No juror indicated they had visited the website or that they knew Attorney Trozzolillo. *Id.*

Additionally, Attorney Pollick wanted to show the jury two documents: (1) a letter she wrote to the trial court alleging that Attorney Romano "falsely certified" the Department's certificate of service when the Department moved for summary judgment, and (2) the certificates of service themselves. (R.R. at 87a, 91a.) In the pre-trial stage of the litigation, the Department moved for summary judgment and on the certificate of service properly listed Attorney Pollick as Appellant's counsel. (R.R. at 717a-18a.) When the Department filed a corrected motion for summary judgment, the certificate of service listed Attorney Pollick as "Pro Se Plaintiff." *Id.* Attorney Pollick raised this error with the trial court, and Attorney Romano explained this was a "typo." (R.R. at 89a-90a, 717a-18a.) Attorney Romano objected to the relevance of these documents, and the trial court found the issue to be irrelevant and precluded any reference to the documents. (R.R. at 91a.)

## B. During the Trial

During the trial, which took place from November 16, 2020, to November 18, 2020, jurors were socially distanced throughout the courtroom due to the COVID-19 pandemic. Only four jurors were placed in the jury box and the remaining eight jurors sat in the gallery. To accommodate the jurors' arrangement, video screens were placed throughout the courtroom so jurors could see witnesses more clearly, and both sides agreed before the trial commenced that the jury would be distanced throughout the courtroom. (R.R. at 474a, 483a-85a.)

The first day of trial proceeded with four witnesses testifying, including Appellant. The second day of trial began with Appellant's testimony. During Appellant's testimony, Attorney Pollick realized that Appellant was not being shown

on the video screens for approximately two hours of her testimony. (R.R. at 365a.) The trial court questioned the jury to see if it had viewed Appellant on the video screens, and the jury stated it had not been able to see Appellant on the video screens but could physically see her. (R.R. at 366a.) The jury indicated it could also hear Appellant's testimony. *Id.* Attorney Pollick noted her objection for the record. (R.R. at 365a-67a.) The trial court asked if she was moving for a mistrial, and Attorney Pollick answered, "No, no, no, no, no, no. I just want to have it so that it[']s of record." (R.R. at 473a-75a.) The next day, Attorney Pollick moved for a mistrial because without the video screens, the jurors could not "make out the visual . . . micro expressions in [her client's] face that" are part of making a credibility determination. (R.R. at 481a.) The trial court determined that Appellant's testimony was not viewable on the video screens because it pertained to review of documentary evidence. (R.R. at 483a.) The trial court did not believe Appellant suffered any prejudice and, therefore, denied her motion for a mistrial. (R.R. at 483a-84a.)

At the conclusion of the trial, Attorney Pollick objected to Attorney Romano's proposed instructions on the adverse action element of the retaliation claim. (R.R. at 497a.) Attorney Pollick argued that an adverse action did not need to rise to a failure to hire, failure to promote, or termination; rather the adverse action only had to dissuade a reasonable person from engaging in the protected activity. *Id.* Attorney Pollick argued this was a different standard for a Title VII retaliation claim as opposed to a Title VII discrimination claim. *Id.* The trial court concluded that Attorney Romano's instruction was the proper instruction and provided the instruction to the jury. (R.R. at 643a-46a.) Appellant re-asserted her objection to the wording of the instruction in the charging conference. (R.R. at 497a-98a, 981a.) The jury found that the Department did not retaliate against Appellant under either Title VII or the First

4

Amendment. (R.R. at 963a.) On November 18, 2020, the jury found for Appellees on the retaliation claims under Title VII and the First Amendment. (Trial Court Pa.R.A.P. 1925 Opinion (1925 Op.) at 1.) The next day, on November 19, 2020, the trial court found for Appellees on the PHRA claim. *Id.*

### C. Post-Trial

On November 25, 2020, Appellant filed a motion for post-trial relief. (R.R. at 978a-85a.) On December 1, 2020, the trial court entered a briefing schedule permitting Appellant 14 days after the trial transcript was completed to file a brief. (R.R. at 972a-73a.) Attorney Pollick informed the trial court that due to the court reporter's health/workload, the trial transcript was still unavailable as of March 22, 2021. (R.R. at 15a.) On May 5, 2021, final judgment in favor of Appellees was entered upon praecipe by Appellees pursuant to Pa.R.Civ.P. 227.4(1)(b). (R.R. at 18a-19a.) On May 21, 2021, Attorney Pollick was provided a copy of the trial transcript. (R.R. at 967a.) On June 1, 2021, Appellant appealed the final judgment to the Superior Court challenging the constitutionality of Pa.R.Civ.P. 227.4(1)(b) as the Department filed its praecipe for entry of final judgment in her case pursuant to that rule. (R.R. at 1a, 7a, 967a.) Upon request of the Department, the Superior Court transferred the appeal to this Court on July 23, 2021. *See* Superior Court Order 7/23/21.

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court issued an opinion. In its opinion, the trial court does not discuss the issues with the certificates of service or the constitutionality of Rule 227.4. (1925 Op. at 3-4.) The trial court characterized the *voir dire* questions pertaining to Attorney Pollick as "bizarre[ ]." *Id.* The trial court reaffirmed that Appellant was not prejudiced by her testimony not appearing on the video screens. *Id.* at 3. Regarding the jury instruction issue, the trial court determined Appellant's claim to be in "vague, generalized, and

conclusory terms" while the finalized jury instructions were "appropriate and consistent with the applicable law." *Id.* at 4.

## II.    ISSUES

On appeal, Appellant presents four issues for review. First, Appellant contends that she was prejudiced by Attorney Romano's actions in listing Attorney Pollick as "Pro Se Plaintiff" in the finalized certificate of service and by Attorney Romano's failure to object to the Trozzolillo jury *voir dire* question. Second, Appellant argues that the trial court erred in denying the motion for a mistrial when Appellant's testimony failed to show on the video screens for the socially distanced jurors. Third, Appellant argues the trial court erred by providing the jury with Attorney Romano's proposed instructions for the retaliation claim. Fourth, Appellant asserts her constitutional rights were violated by the application of Pa.R.Civ.P. 227.4(1)(b) when final judgment was entered 120 days after Appellant's post-trial motions but before the final trial court transcript was made available to Appellant. Ultimately, Appellant requests that this Court vacate the trial court's judgment and remand for a new trial.

## III.    DISCUSSION

### A. Prejudice[2]

Appellant argues she was prejudiced by Attorney Romano objecting to the "thatfamily.com" *voir dire* question and "intentionally" stating that Attorney Pollick was the "Pro Se Plaintiff" on the finalized summary judgment certificate of service. (Appellant's Br. at 13.) From what the Court can surmise from Appellant's brief, it appears that she is arguing that she was deprived of a fair and impartial jury due to the actions of Attorney Romano.

---

[2] In an appeal seeking a new trial, "[t]he award of a new trial is proper only where a trial court has committed an error of law or abuse of discretion which may have affected the verdict." *Boyle v. Independent Lift Truck, Inc.*, 6 A.3d 492, 494 (Pa. 2010) (citing *Department of General Services v. United States Mineral Products Co.*, 956 A.2d 967, 970 (Pa. 2008)).

6

Prejudice occurs when the error is fundamental and materially affects the outcome of the trial where a different ruling would have happened but for the fundamental error. *Grove v. Port Authority of Allegheny County*, 218 A.3d 877, 888 (Pa. 2019). Irregularities or "harmless errors" during a trial do not rise to prejudice without a clear showing that they materially altered the outcome of the case. *Id.* "Harmless error exists if the record demonstrates either . . . the error did not prejudice the defendant[,] or the prejudice was *de minimis*." *Id.* at 890 (citation omitted).

Regarding prejudice, Appellant relies on two cases: *United States v. Sampson*, 820 F. Supp. 2d 151 (D. Mass. 2011), and *Long-Term Capital Holdings v. United States*, 2002 WL 31934139 (D. Conn. 2002), neither of which this Court finds applicable to this case. *Sampson* involved a claim that a juror who was not excused exhibited bias, and thus, is irrelevant primarily because Appellant has not identified a juror who should have been excused due to bias. Appellant cites *Long-Term Capital* in her brief and states "[a] party 'may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purpose.'" (Appellant's Br. at 13) (citing *Long-Term Capital*, slip op. at *6). Appellant misapplies this quote which concerns how attorney-client privilege may be implicitly waived when the privileged material is at the heart of the party's claim in which case "fairness requires examination of protected communications." *Id.*, slip op. at *6. Appellant also cites to broad principles from the Pennsylvania Rules of Professional Conduct, namely knowingly making a false statement of material fact or law to a tribunal, 204 Pa. Code Rule 3.3, and prohibiting, *inter alia*, the falsification of evidence or the unlawful obstruction of another's access to evidence, 204 Pa. Code Rule 3.4, and argues "[o]ne's opponent should take advantage of a litigant's counsels' known disadvantage." (Appellant's Br. at 14.) This argument is entirely unavailing because Appellant has not demonstrated that she actually suffered any prejudice that would have altered the outcome of the case or identified a juror who should have been excused.

7

Accordingly, we conclude this issue is wholly without merit.

## B. Constitutionality of Pa.R.Civ.P. 227.4(1)(b)[3]

Appellant argues that the application of Pa.R.Civ.P. 227.4(1)(b) violates her constitutional rights because it allows a party to obtain final judgment without due process. (Appellant's Br. at 20.) In essence, Appellant argues that due to the court reporter's delay, the trial transcript she paid for was not available before the trial court entered final judgment, and thus, Pa.R.Civ.P. 227.4(1)(b) is unconstitutional for lack of due process. Appellant relies on the three factors from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), as applied in *Hartner v. Home Depot USA, Inc.*, 836 A.2d 924 (Pa. Super. 2003). The *Mathews* factors for determining the constitutional sufficiency of a statutory procedure are: (1) the nature of the interest at stake; (2) the risk of being deprived of the interest at stake under the current procedure(s) in place balanced against the value of "additional or substitute procedural safeguards"; and (3) the government's interest in the additional or substitute procedural safeguard. *Mathews*, 424 U.S. at 335; *Hartner*, 836 A.2d at 927. Utilizing these factors, Appellant asserts that she was deprived of due process because she was never heard by the trial court on claimed errors, despite paying for the trial transcript, and therefore, she paid for and filed a notice of appeal. (Appellant's Br. at 20-21.) Appellant argues that this case is distinguishable from the Superior Court's decision in *Hartner*, 836 A.2d 924, because she paid for a trial transcript. We disagree.

In relevant part, Rule 227.4(1) provides:

[T]he prothonotary shall, upon praecipe of a party:

---

[3] Where an appeal involves questions of law, our standard of review is *de novo*, and our scope of review is plenary. *MERSCORP, Inc. v. Delaware County*, 160 A.3d 961, 964 n.2 (Pa. Cmwlth. 2017), *aff'd*, 207 A.3d 855 (Pa. 2019).

8

(1) enter judgment upon a nonsuit by the court, the verdict of a jury or the decision of a judge following a trial without jury, if

(a) no timely post-trial motion is filed; or

(b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration.

Pa.R.C.P. 227.4(1)(b). Rule 227.4, which deals with the entry of judgment upon praecipe of a party, states that post-trial motions are deemed denied if not decided within 120 days of their filing, and judgment may thereafter be entered. This rule is optional with the parties and "the rule provides the parties with the ability to 'move the case along.'" *See* Pa.R.C.P. 227.4, Explanatory Comment – 1995, §I(a).

In *Hartner*, the Superior Court considered a constitutional challenge to the application of Rule 227.4(1)(b). There, the defendant, Home Depot, had filed post-trial motions, but because a decision had not been rendered within 120 days of the filing of post-trial motions, the plaintiff, Hartner, filed a praecipe for judgment pursuant to Rule 227.4(1)(b). The Superior Court noted that while not dispositive, "it [was] inappropriate for Home Depot to complain that Rule 227.4(1)(b) had operated an injustice when Home Depot never made attempts to protect itself." *Id.* at 929. The Superior Court concluded that, although under the *Mathews* factors Rule 227.4(1)(b) did not deprive either party of the right to due process, Home Depot did not comply with the appropriate rules of appellate procedure when challenging the constitutionality of the rule. *Id.* at 928.

Here, similar to *Hartner*, Appellant filed post-trial motions on November 25, 2020. After having issues with the trial transcript, Appellant did not request from

9

the Department an extension of the 120-day timeline. *See Kanter v. Epstein*, 866 A.2d 394, 397 (Pa. Super. 2004) (noting that the parties "explicitly agreed to extend the 120-day deadline . . .") Alternatively, Appellant could have requested the trial court to extend the 120-day timeline given the court reporter's delay in transcribing the testimony. *See* Pa.R.Civ.P. 248 ("The time prescribed by any rule of civil procedure for the doing of any act may be extended . . . by order of court."). However, Appellant did neither of these things. Thus, approximately six months after the completion of the trial and the filing of Appellant's post-trial motion, the Department filed a praecipe to enter final judgment. As the Superior Court noted in *Hartner*, the duty was on Appellant to take steps to protect herself from the entry of final judgment.

Therefore, we conclude that Appellant's argument that Pa.R.Civ.P. 227.4(1)(b) is unconstitutional as applied in this case is unavailing.

## C. Jury Layout and Motion for Mistrial

Appellant asserts that the trial court erred when it denied her motion for a mistrial due to logistical problems. (Appellant's Br. at 15.) Additionally, Appellant contends that she was prejudiced by the fact the jurors were spaced throughout the courtroom and could not see her facial expressions and demeanor on the video screens.

Conversely, the Department argues that Appellant has waived this argument for failure to timely object to the jurors' seating arrangement. The Department further argues that the video screens issue was waived because Attorney Pollick registered her objection mid-trial, and, thus, it was untimely. (Department's Br. at 24-8.)

First, we review the standard of this Court when reviewing a trial court's denial of a motion for mistrial. "The decision to grant or deny a motion for mistrial rests primarily in the discretion of the trial court." *Daddona v. Thind*, 891 A.2d 786, 809 (Pa. Cmwlth. 2006). "Absent a clear abuse of discretion, an appellate court will not disturb the trial court's ruling." *Id.* Moreover, we note that "in order to preserve a

10

trial objection for review, trial counsel is required to make a timely, specific objection during trial." *Takes v. Metropolitan Edison Co.*, 695 A.2d 397, 400 (Pa. 1997) (citations omitted).

> Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity. It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation.

*Trigg v. Children's Hospital of Pittsburgh of UPMC*, 229 A.3d 260, 29 (Pa. 2020) (citations omitted). Our review of the record reveals that Attorney Pollick's objection to the video screens was raised mid-trial when Attorney Pollick realized Appellant's face was not appearing on the video screen. The following relevant exchange occurred regarding the jury's visibility of Appellant during her testimony.

> MS. POLLICK: Your Honor, we don't have it viewing for this jury. I don't know how long it's not been viewing. She's testifying.
>
> MS. ROMANO: I don't think it's been on all day, actually.
>
> MS. POLLICK: So the [jurors] have not seen her testimony.
>
> THE WITNESS: I thought they saw them reading. Did you see? They saw.
>
> MS. ROMANO: I think the exhibits have been displayed all day. I'm not sure about the witness.
>
> MS. POLLICK: But your testimony has not been transcribed - - has not been visible to the jurors in the back of the room, which he have [sic] the majority. There's only four up here in the jury box. And you have not - - the Court has not made sure her testimony was viewable to the jury? I just want to note my objection for the record.

11

THE COURT: That's a mutual responsibility of counsel. Proceed.

MS. ROMANO: Yes, sir. Can we maybe verify with the jurors if there is anybody who has been unable to observe her testimony today.

THE COURT: That's a fair question. Particularly as it relates to the jurors that are located in the rear of the railing. Is there anyone who has not been able to, on number, hear the testimony of [Appellant] during cross-examination? Let the record indicate no response.

Is there anyone who was not able to observe [Appellant] on the various screens that are placed throughout the courtroom; raise your hand? Let the record indicate - -

JUROR: Wait, you mean have we not been able to see her on the screen, but we physically can see her.

THE COURT: Okay. And you've been able to observe her physically?

Juror: Yes.

MS. POLLICK: But you have not been able to hear her voice?

THE COURT: They previously indicated they were able to hear her testimony. We have covered that.

MS. POLLICK: Okay. I just want to make sure.

THE COURT: Yes. So we'll continue.

(R.R. at 365a-67a.)

Importantly, Attorney Pollick's mid-trial objection was to the technological error with the video screens and not with the jury's seating positions. Before the trial commenced, the parties understood that due to the social distancing

12

protocol, the jurors would be distanced, and **neither party objected to the jury's seating arrangement**. (R.R. at 474a, 483a-85a.) In its 1925(a) opinion, the trial court stated that the jurors were placed throughout the courtroom "so that they could observe the witnesses who testified" and that video screens were placed to aid the jury in viewing witnesses' testimony and exhibits. (1925 Op. at 3.) The jury was spread out in the courtroom so that four members were in the jury box and the remaining members were spread out throughout the gallery. (R.R. at 42a, 95a.) Attorney Pollick did not object at this time prior to trial regarding the layout of the jury in the courtroom. Because Appellant did not object prior to the trial regarding the jury layout, the objection is waived.

Moreover, as noted above, the trial court promptly addressed the issue with the jury, which stated that although Appellant was not seen on the screen, the jurors were physically able to see her. (R.R. at 366a.) The jurors also indicated that they heard Appellant's testimony. *Id.* The trial court indicated that Appellant's testimony was mostly to review documents, making examination of her facial features less important. (R.R. at 483a.) Thus, the trial court determined that Appellant did not suffer prejudice by her face not appearing on the video screens during part of her testimony and denied Appellant's motion for a mistrial. (R.R. at 483a-84a.)

Accordingly, we do not conclude that the trial court abused its discretion in denying Appellant's motion for mistrial.

### D. Jury Instructions

Lastly, we address Appellant's argument that the trial court erred when it included the incorrect standard for "adverse action" in its jury charge. In response, the Department contends that Appellant waived this issue as she failed to preserve it by making a specific objection in post-trial motions. (Department's Br. at 29.) We agree.

To preserve an objection to a jury instruction, the litigant must lodge a specific objection as general objections will not preserve the issue for appellate review.

13

Pa.R.A.P. 302(b). It is well established that to preserve the issue for appeal, the litigant must make a timely, specific objection at trial and must raise the issue in post-trial motions. *Municipal Authority of the Borough of Midland v. Ohioville Borough Municipal Authority*, 108 A.3d 132, 136-37 (Pa. Cmwlth. 2015). Issues not preserved for appellate review cannot be considered by this Court, even if the alleged error involves a "basic or fundamental error." *City of Philadelphia v. DY Properties, LLC*, 223 A.3d 717, 722 (Pa. Cmwlth. 2019).

> Here, the trial court's instructions included, in relevant part:

> > An adverse employment action is one which constitutes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant changes in benefits. To be adverse, the employment action must be serious and tangible enough to alter the employee's compensation, terms, conditions, or privileges of employment. Written reprimands do not constitute an adverse action if they do not [e]ffect a material change in the terms or conditions of employment.

> > In a retaliation claim such as this, an adverse employment action can be any action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Petty swipes, minor annoyances and simple lack of manners will not create such a deterrence. Rather retaliation is actionable only when it produces material injury or harm sufficient to deter opposition to or reporting of discriminatory practices.

(R.R. at 643a-46a.) It is undisputed Attorney Pollick, at trial, made a specific objection to the proposed instruction arguing the adverse action did not need to rise to a failure to hire, promote, or terminate, as the adverse action only had to dissuade a reasonable person from engaging in the activity during the charging conference, which is the same issue Appellant briefs to this Court. (R.R. at 497a-98a; Appellant's Br. at 17-20.)

However, Appellant did not include this specific objection to the proposed jury instruction in the post-trial motion, and instead made a general objection. In her post-trial motion, Appellant stated:

> The trial court gave erroneous jury instructions; and specifically related to a claim for retaliation which is motive driven and encompasses a totality of circumstances. By instructing the jury that a certain piece of evidence cannot support a claim of retaliation, the trial court erred since it did not accurately state the jury instructions for a claim of retaliation.

(R.R. at 981a.) Appellant did not mention the "adverse action" element in the post-trial motion or provide a specific objection to the trial court's jury instructions as she did during the charging conference. Appellant did not reference that the trial court erred in requiring the jury to find a "significant change in employment status, such as hiring, firing, [or] failing to promote," and instead, Appellant made "vague, generalized, and conclusory" statements about the trial court's jury instructions. (1925 Op. at 4.) Therefore, this issue is not properly preserved for our review, and this Court may not now address it.[4]

---

[4] Even if the issue was properly preserved, we would conclude that the trial court did not err in its jury instructions. Appellant argues the trial court erred in its instruction on the third element regarding adverse action because the trial court erroneously charged the jury that "it had to find that an action altered [her] employment in order for her to succeed on a claim for retaliation." (Appellant's Br. at 19.)

This Court's review of a trial court's jury instructions is limited to determining whether the trial court abused its discretion or committed an error of law; even if the trial court erred in its jury instructions, we will not award a new trial "unless the jury charge in its entirety was unclear, inadequate, or tended to mislead or confuse the jury." *Hall v. Jackson*, 788 A.2d 390, 399 (Pa. Super. 2001) (citations omitted). In determining whether the trial court erred in its jury instructions, we must consider the jury charge as a whole in light of the evidence presented. *Volponi v. Borough of Bristol*, 551 A.2d 657, 660 (Pa. Cmwlth. 1988) (citation omitted). The elements of a Title VII retaliation claim are: (1) the employee engaged in a protected activity; (2) the employer took adverse action against the employee; and (3) there is a causal connection between the employee's protected activity

**(Footnote continued on next page…)**

## IV.   CONCLUSION

For all of the above reasons, the trial court's judgment is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

---

and the employer's adverse action. *Daniels v. School District of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted). An adverse action must be materially adverse, which is one that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). Moreover, the Third Circuit Court of Appeals has held that a written reprimand does not constitute an adverse action if it does not affect the employee in any material way. *Allen v. National Railroad Passenger Corp. (Amtrak)*, 228 F. App'x 144, 148-49 (3d Cir. 2007).

When the jury instructions are viewed as a whole, we would conclude that the trial court did not abuse its discretion in issuing its instructions as to the adverse action element of a Title VII retaliation claim. The trial court instructed the jury regarding what constitutes an adverse action. (R.R. at 645a-46a.) Because this case involved workplace retaliation, the trial court instructed the jury on adverse actions in the workplace. *Id.* Regarding Appellant's argument that the trial court set the burden too high, the trial court used "materially adverse" and twice added that this means the action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Accordingly, we would conclude that the trial court did not err or abuse its discretion in its jury instructions as it adequately and fully conveyed the law.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen Finsterbusch,            :
            Appellant      :
                           :
         v.             :   No.  970 C.D. 2021
                           :
Pennsylvania Department of Health,  :
Commonwealth of Pennsylvania     :
and Douglas P. Koszalka        :

## *ORDER*

AND NOW, this 6th day of September, 2023, the final judgment of the Court of Common Pleas of Luzerne County entered on May 5, 2021, is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge